In the Matter of MILTON M. BERGERMAN, Individually and as Chairman of the Citizens Union of the City of New York, Respondent, against THOMAS F. MURPHY et al., Constituting the Board of Trustees of Police Pension Fund of the City of New York, et al., Appellants.

First Department, June 20, 1951.

*John P. McGrath* of counsel (*Seymour B. Quel* and *Andrew Bellanca* with him on the brief; *John P. McGrath, Corporation Counsel,* attorney), for Board of Trustees of the Police Pension Fund, appellant.

*Charles Haydon* for James E. Furey and Bernard A. Collins, appellants.

*Samuel D. Smoleff* for respondent.

COHN, J.  The questions presented are (1) whether subdivision f of section B18–4.0 of the Administrative Code of the City of New York is valid or whether its provisions contravene section 1 of article VIII of the New York State Constitution, which prohibits a municipality from making gifts of public funds; and (2) if the statute is constitutional, whether defendants James E. Furey and Bernard A. Collins are entitled to the pension benefits provided thereunder.

The Special Term held that subdivision f of section B18–4.0 of the Administrative Code is unconstitutional as authorizing a gift of public funds.  The court ruled that, since under the statute one holding the office of police commissioner or deputy police commissioner for no matter how short a period could retire immediately upon the adoption of a resolution fixing his pension, pension payments so authorized " cannot be regarded in any other light than as ' gifts ' of public funds without any consideration therefor."  A final order was granted permanently restraining the trustees of the police pension fund of the city of New York from giving effect to this provision of the code and from awarding any pension to Furey and Collins except such as each might be entitled to receive as a retired patrolman assigned to duty as a first grade detective, directing the board of trustees to forthwith rescind resolutions retiring them on an annual pension of $6,000 and to discontinue payment

thereof. The order was entered after a trial of the issues by the court without a jury. Furey and Collins have also appealed from an order denying their motion to bring in certain parties who had held the position of police commissioner or deputy police commissioner and had retired with pensions granted pursuant to the authority of subdivision f, now attacked as unconstitutional.

The facts are not in dispute. On July 11, 1950, defendant Furey, who had been a member of the police department of the city of New York for over thirty years, resigned his position as detective, first grade, at a salary of $5,175, to accept appointment as seventh deputy police commissioner at a salary of $8,500 per annum. The day he was appointed to the deputy commissionership he made application for retirement from the police force and on July 17, 1950, the board of trustees of the police pension fund adopted a resolution retiring him pursuant to subdivision f of section B18–4.0 and placing his name on the pension roll at an annual pension of $6,000 effective July 11, 1950. The maximum pension that service on the police force would have entitled him to receive would have been $3,087.50. Furey held the title of deputy police commissioner for forty-four days, or until August 24, 1950, when he resigned. He then began to receive pension payments at the rate of $6,000 per annum. Furey, for the last ten years of his service on the uniformed force, had been assigned to duty as chauffeur and bodyguard to the then District Attorney of Kings County and later to the same official when he became the Mayor of the City of New York.

On the day Furey resigned as a deputy police commissioner, defendant Collins, who had been a policeman for more than twenty years, gave up his position as first grade detective at a salary of $5,175, to accept appointment as seventh deputy police commissioner, left vacant by Furey, at a salary of $8,500 per annum. Prior to his promotion he too had served as a bodyguard and chauffeur for the Mayor, but for a period of four years. On the day of his appointment, Collins applied for retirement from the police force and on September 19, 1950, the board of trustees retired him and placed his name upon the pension roll at an annual pension of $6,000 effective as of the day of his appointment as deputy police commissioner, to-wit, August 24, 1950. He held the title for sixty-seven days, or until October 31, 1950, when at the request of the new police commissioner, he resigned. Thereafter he began to draw the pension at the rate of $6,000 per annum. As a first grade detective his maximum pension would have been $2,787.50.

Section B18-2.0 of the Administrative Code of the City of New York provides: " a. The police pension fund shall be administered by a board of trustees which shall, subject to the provisions of law and to the prior approval of the board of estimate, from time to time, establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof."

Subdivisions c and f of section B18-4.0 of the Administrative Code make provision for retirement from the service in certain cases as follows:

" c. Any member who:

" 1. Shall have elected to contribute on the basis of retirement after twenty years of service and who has or shall have performed service in the force for at least twenty years, or

" 2. Shall have elected to contribute on the basis of retirement after twenty-five years of service and who has or shall have performed service in the force for at least twenty-five years,

" upon his own application in writing shall be retired from such force and service, and placed on the roll of the pension fund, and awarded and granted, to be paid from such fund, an annual pension during his lifetime, of not less than one-half his full salary on the date of his retirement from service."

" f. Any member who shall have performed duty on the force for a period of twenty years, and who subsequently shall serve as police commissioner or deputy police commissioner, shall be retired and placed upon the pension roll of such pension fund and granted the pension allowed to a chief inspector in such department."

A " member " is defined by section B18-1.0 of the Administrative Code as " A person who was a member of the police force in the department at the time when this section shall take effect " [namely March 29, 1940].

The validity of the statute (Administrative Code, § B18-4.0, subd. f) depends upon whether the pensions authorized by its terms are in the nature of increased compensation to public servants or whether they constitute a gift of the city's moneys. Where as here the rendition of services by persons of the class affected by the statute is voluntary and they are under contract of service for no fixed time, any promise of reward in addition to regular compensation which looks to the future and depends upon the continued performance of service after the promise is made, enters into the consideration for services to be rendered and is not extra compensation, nor is it a gift. (*Matter of*

*Wright* v. *Craig,* 202 App. Div. 684, 687, 688, affd. 234 N. Y. 548.) Pensions given in consideration of services not fully recompensed when rendered are not gifts of public funds. They are in effect pay withheld to induce long, continued and faithful service. (*Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208, 212 [CONWAY, J.]; *Kieran* v. *Hunter Coll. Retirement Bd.,* 255 App. Div. 378, 379; *Hammit* v. *Gaynor,* 144 N. Y. S. 123; 1 Dillon on Municipal Corporations [5th ed.], § 430.) In *Hoyt* v. *County of Broome* (285 N. Y. 402, 406–407), LOUGHRAN, J. (now Chief Judge), in concise language set forth the pertinent rule as follows: " We have held that pensions to municipal officers and employees are not grants of gratuities, but a recognition by the Legislature of an obligation founded upon the fidelity of services rendered for the State through its political subdivisions. (*Matter of Wright* v. *Craig,* 202 App. Div. 684; 234 N. Y. 548.) The reasoning on which that conclusion was reached was this: ' In its relation to the betterment of the public service, through the incentive offered to faithful devotion to duty, and through the retirement rather than the retention in service at full pay of those servants who have outlived their usefulness, the purpose of granting pensions is " a public purpose," and as affecting a municipality, " a city purpose," within the definition of these terms as judicially adopted.' (BISCHOFF, J., in *Hammitt* v. *Gaynor,* 144 N. Y. Supp. 123, 126. See, too, *Matter of Carr* v. *Roesch,* 231 App. Div. 19; 255 N. Y. 614.) "

Under the challenged section of the Administrative Code, a member of the police force at the time it took effect, to wit, March 29, 1940, who has contributed to the pension fund, has performed duty on the force for a period of twenty years, and who subsequently has served as police commissioner or deputy police commissioner, could be retired upon his own application with a pension allowed to a chief inspector. The salary of a chief inspector in 1950 was $12,000 and the minimum pension which could then be granted was $6,000. A pension awarded pursuant to this enactment, we hold, is sustained by adequate consideration. A grant made thereunder in good faith is not a gift of the city's moneys but a pension in its true sense. It is a prospective award or deferred compensation for service not fully recompensed as rendered. As such the statute does not contravene the provisions of section 1 of article VIII of the State Constitution. (*Timmerman* v. *City of New York,* 69 N. Y. S. 2d 102, affd. 272 App. Div. 758.)

The legislative intent in enacting subdivision f was to offer to the then members of the police force further incentive to

qualify themselves by the high quality or the length of their service for promotion to the position of police commissioner or deputy police commissioner. Such positions, it is to be noted, are in the exempt class and the appointee is subject to removal at the pleasure of the appointing power (New York City Charter [1938], §§ 431, 432). A member of the police force qualified by experience and training to accept such a high administrative post might be unwilling to give up his assurance of tenure to accept an exempt position as commissioner or deputy commissioner unless increased inducements were offered to him. Promise of a pension in the future at a chief inspector's rate to one who shall have performed duty on the force for twenty years would obviously encourage such result and bring about a betterment of the public service. The statute in its present form, in existence for over eleven years, has been applied in the cases of other police commissioners and deputies, some of whom after promotion continued in the service for many years. (Cf. *Matter of Kent* v. *Valentine,* 184 Misc. 94 [Shientag, J.], affd. 269 App. Div. 831, motion for leave to appeal denied 294 N. Y. 641.) Abuses of the statute there may have been, but that is no reason for striking it down. What will best promote the public welfare is primarily a matter of legislative concern. (*Hoyt* v. *County of Broome, supra; Schieffelin* v. *Warren,* 250 N. Y. 396; *Matter of Wingate* v. *McGoldrick,* 279 N. Y. 246, 249.)

Accordingly, we hold that subdivision f of section B18–4.0 of the Administrative Code is a valid statute and is constitutional. Mere proof of the use of the statute for purposes not intended, does not justify the court in annulling a law which has served to protect capable and qualified members of the police force who have accepted civilian status as police commissioner or deputy police commissioner at the request of a Mayor or police commissioner whose desire it is to keep them in the department in the public interest. If under the statute the pensions awarded are not made in good faith but are in fraud of the rights of the city or of other beneficiaries of the pension fund, such acts may be corrected. A pension thus obtained may be annulled. (Cf. *Matter of Heffernan* v. *McGoldrick,* 259 App. Div. 671, 675.)

Insofar as the appointments of Furey and Collins as seventh deputy police commissioner are concerned, we are of the view that they were made in fraud of the rights of the city, and solely for the purpose of enabling the favored appointees, who had served as chauffeur and bodyguard to the then Mayor of the city, to receive as a reward for such personal service the

difference, for life, between the annual pension to which they might normally be entitled and the $6,000 allowable to a retired chief inspector. Upon the trial had at Special Term on the question of the good faith of these two appointments, it was demonstrated that for the short time these men held the higher administrative position, neither Furey nor Collins did in fact perform the duties of the seventh deputy police commissioner as those duties were defined in the police manual of procedure. It was claimed that they had been assigned by the police commissioner to the New York office of civilian defense and that they were to supervise transportation problems. However, the testimony shows that another, who was an acknowledged expert in transportation, was placed in charge and that neither Furey nor Collins was assigned to such division of transportation, but that they were designated as so-called liaison officers on the staff of the commission of civilian defense. After Furey and Collins had respectively resigned as commissioner from the office of civilian defense, no one was appointed to replace them. Their wholly nominal commissionership, which was all that was contemplated by their appointment, did not satisfy the pension requirement of the statute that they should "serve as police commissioner or deputy police commissioner."

The circumstances of the appointments and the record of their performance compel the inference that the sole and primary purpose in giving them the title of deputy commissioner was to afford them an opportunity after a brief period to resign and to seek for life a pension in excess of the salary they had been receiving as first grade detective and which was about twice as large as that which they would have received if they had been retired as first grade detective. In purpose and effect they were to be given the pension of a deputy commissioner at an unauthorized and excessive pension for their particular police and detective service rather than for any service as a commissioner. The latter service would be a requisite to the increased pension but such service was not rendered nor was it ever intended to be rendered.

Accordingly, we hold that their respective appointments to the position of seventh deputy police commissioner were made in bad faith and were invalid and illegal, and that the award to them of a pension in the sum of $6,000 was likewise invalid and illegal. Defendants, constituting the board of trustees of the police pension fund, are accordingly directed to rescind the resolutions retiring them on an annual pension of $6,000 and in lieu thereof to retire them on such pension as each may be

lawfully entitled to receive by reason of their service in the uniformed force.

Insofar as the order appealed from declares unconstitutional the provisions of subdivision f of section B18–4.0 of the Administrative Code, it is reversed, and is otherwise affirmed. Settle order.

SHIENTAG, J. (concurring in result). I agree with the result reached by the learned majority. I go further, however. I believe that the section in the Administrative Code in controversy is invalid; it is in violation of section 1 of article VIII of the State Constitution which prohibits a municipality from " giving " public funds to or in aid of any individual. The section in the Administrative Code here under attack is dressed in the garb of a pension, but its terms disclose what in reality it is: a gift of city funds. The reasons for this holding are set forth in the opinion of BENVENGA, J., at Special Term and need not here be repeated.

The order appealed from should be affirmed in all respects.

CALLAHAN, J. (dissenting). I dissent and vote to reverse the order appealed from and to dismiss the petition. I agree entirely with the view of the majority that the statute is constitutional. Furthermore, in my opinion the pension payable under subdivision f of section B18–4.0 is mandatory. The statute provides as the sole requirement for the right to receive the pension twenty years' prior service as a police officer and appointment to a commissionership.

The court has no power to review the original appointments of Furey and Collins as seventh deputy police commissioners. Nor would the board of trustees of the police pension fund have power or authority to question such appointments, where they were regularly made by an officer having authority to act. Under the circumstances, the pension awards may not be reviewed by the courts, where the recipients are qualified by reason of having rendered the required prior service and have been duly appointed to the office of deputy police commissioner. The action of the trustees in this case was not discretionary, as it was in *Matter of Heffernan* v. *McGoldrick* (259 App. Div. 671). Nor was there any attempt to pay in excess of the minimum pension of a chief inspector as in *Matter of Kent* v. *Valentine* (184 Misc. 94, affd. 269 App. Div. 831). Since the action by the trustees is mandatory and in accord with the statute, it would seem improper for the courts to label such action in bad faith or in fraud of the city's rights. If there is an evil to be cor-

rected because the statute is unwise or works a detriment to the public interest, appropriate action should be taken by the legislative branch of the Government. (*Matter of Wingate* v. *McGoldrick*, 279 N. Y. 246, 249.)

PECK, P. J., and GLENNON, J., concur with COHN, J.; SHIENTAG, J., concurs in result, in opinion; CALLAHAN, J., dissents and votes to reverse and dismiss the petition, in opinion.

It is hereby ordered that the order so appealed from, insofar as it declares unconstitutional the provisions of subdivision f of section B18–4.0 of the Administrative Code, is reversed, and the order is otherwise affirmed. Settle order on notice.